UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

NOBLE TALENTS LLC, NOBLE CAPITAL                    Index No. 19-cv-11020
INTERNATIONAL, LLC, and NOBLE MARKETS,
LLC,

               Plaintiffs,

                                             **SECOND**
                                             **AMENDED**
              v.                        **<u>COMPLAINT</u>**

MARC ASCH, Individually and as the
Alter Ego of MEA INVESTMENTS LLC,
MEA INVESTMENTS LLC, EHA INVESTMENTS
LLC, and AJA RSF, LLC,

                                             **JURY TRIAL**
                                           **DEMANDED**

               Defendants.
------------------------------------------------------------------x

Plaintiffs, NOBLE TALENTS, LLC, NOBLE CAPITAL, LLC, and NOBLE
MARKETS, LLC (collectively the "Plaintiffs"), by and through their attorneys, Exemplar
Law, LLC, for their Complaint against defendants MARC ASCH, Individually and as the
Alter Ego of MEA INVESTMENTS LLC,  MEA INVESTMENTS LLC, EHA
INVESTMENTS LLC, and AJA RSF, LLC (the "Defendants") hereby allege as follows:

<u>**THE PARTIES**</u>

1.     Plaintiff NOBLE TALENTS, LLC is a Delaware limited liability company
duly authorized to conduct business in the State of New York with a principal place of
business located in the County of New York, City of New York.

2.     Plaintiff NOBLE CAPITAL INTERNATIONAL, LLC is a Delaware
limited liability company with a principal place of business located in the County of New
York, City of New York.

3.      Plaintiff NOBLE MARKETS, LLC is a Delaware limited liability company duly authorized to conduct business in the State of New York with a principal place of business located in the County of New York, City of New York.

4.      Defendant MARC ASCH is an individual with a residence and domicile located in the County of New York, City of New York.  From on or about February 14, 2016 to June 21, 2018 and from June 22, 2018 through August 3, 2018 by Plaintiffs, first as a Chief Strategy Officer for plaintiff NOBLE MARKETS, LLC, then as Chief Financial Officer for same, as well as for plaintiffs NOBLE TALENTS LLC and NOBLE CAPITAL INTERNATIONAL LLC, and later as a temporary consultant for Plaintiffs following his initial termination on or about June 21, 2018.

5.      Defendant MEA INVESTMENTS LLC is a limited liability company that conducts business in the State of New York and which is, upon information and belief, owned and controlled exclusively by defendant MARC ASCH, one of its general partners and/or shareholders, and which, upon further information and belief, has a principal place of business located in the State of Massachusetts.

6.      Defendant EHA INVESTMENTS LLC is a limited liability company that conducts business in the State of New York and which is, upon information and belief, primarily controlled by defendant MARC ASCH, one of its shareholders, and which, upon further information and belief, has a principal place of business located in Massachusetts.

7.      Defendant AJA RSF, LLC is a Delaware limited liability company that conducts business in the State of New York and which is, upon information and belief, primarily controlled by defendant MARC ASCH, one of its shareholders.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over Plaintiffs claims pursuant to 28 U.S.C. § 1331 as there is an allegation of a violation of 18 U.S.C. § 1030 ("Fraud and related activity in connection with computers").   Moreover, there is an amount in controversy that exceeds the jurisdictional limits of this Court, as well as supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

9.      Personal jurisdiction is proper pursuant to C.P.L.R. § 301, 18 U.S.C. § 1965, and Federal Rule of Civil Procedure 4(k).

10.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b), as defendant MARC ASCH, Individually and as the Alter Ego of MEA INVESTMENTS LLC resides in the County of New York, City of New York and, upon information and belief, defendant MEA INVESTMENTS LLC has an office in the County of New York, City of New York, each   of the Defendants, including   EHA INVESTMENTS LLC and AJA RSF, LLC has transacted business in the County of New York, City of New York, and a substantial part of the events or omissions giving rise to this matter occurred in the Southern District of New York.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

11.     On or about February 14, 2016, Defendant was hired by plaintiff NOBLE MARKETS, LLC as its Chief Strategy Officer, a position which gave defendant MARC ASCH virtually unfettered access to, inter alia, its human resources, financial, intellectual property, proprietary, and client information.   Defendant MARC ASCH's offer letter, which was signed by defendant MARC ASCH, provided, in relevant part, that he would "be required to agree to company policies and procedures[.]" Defendant MARC ASCH

subsequently became the Chief Financial Officer for plaintiff NOBLE MARKETS, LLC during his tenure.

12.     On or about April 4, 2016, defendant MARC ASCH and plaintiff NOBLE MARKETS, LLC signed and executed a "Confidential Information and Invention Assignment Agreement" (the "April 4, 2016 Agreement") with plaintiff NOBLE MARKETS, LLC as a condition of his employment with plaintiff NOBLE MARKETS, LLC and its current or future subsidiaries, affiliates, successors, or assigns.

13.     Defendant MARC ASCH agreed, through Section 3 ("Confidential Information") of the April 4, 2016 Agreement that:

> "(a) **Protection of Information**.  I understand that during the Relationship, the Company intends to provide me with information, including Confidential Information (as defined below), without which I would not be able to perform my duties to the Company.  I agree, at all times during the term of the Relationship and thereafter, to hold in strictest confidence, and not to use, except for the benefit of the Company to the extent necessary to perform my obligations to the Company under the Relationship, and not to disclose to any person, firm, corporation, or other entity, without written authorization form the Company in each instance, any Confidential Information that I obtain, access or create during the term of the Relationship, whether or not during working hours, until such Confidential Information becomes publicly and widely known an made generally available through no wrongful act of mine or of others who were under confidentiality obligations as to the item or items involved.  I further agree not to make copies of such Confidential Information except as authorized by the Company.

> "(b) **Confidential Information**.  I understand that "Confidential Information" means information and physical material not generally known or available outside the Company and information and physical material entrusted to the Company in confidence by third parties.  Confidential Information includes, without limitation: (i) Company Inventions (as defined below); and (ii) technical data, trade secrets, know-how, research, product or service ideas or plans, software codes and designs, algorithms, developments, inventions, patent applications, engineering designs, laboratory notebooks, processes, formulas, techniques, biological materials, mask works, engineering designs and drawings, hardware configuration information, agreements with third parties, lists of, or information relating

to, employees and consultants of the Company (including, but not limited to, the names, contact information, jobs, compensation, and expertise of such employees and consultants), lists of, or information relating to, suppliers and customers  (including, but not limited to, customers of the Company on whom I called or with whom I became acquainted with during the Relationship), price lists, pricing methodologies, cost data, market share data, marketing plans, licenses, contract information, business plans, financial forecasts, historical financial data, budgets or other business information disclosed to me by the Company either directly or indirectly, whether in writing, electronically, orally, or by observation.

"(c) **Third Party Information**.  My agreements in this Section 3 are intended to be for the benefit of the Company and any third party that has entrusted information or physical material to the Company in confidence. I further agree that, **during the term of the Relationship and thereafter, I will not improperly use or disclose to the Company any confidential, proprietary or secret information of my former employer(s) or any other person, and I agree not to bring any information onto the Company's property or place of business (emphasis added)**.

"(d) **Other Rights**.  This Agreement is intended to supplement, and not to supersede, any rights the Company may have in law or equity with respect to the protection of trade secrets or confidential or proprietary information."

14.     Defendant MARC ASCH further agreed, through Section 5 ("Company Property; Returning Company Documents") of the April 4, 2016 Agreement that: "I acknowledge and agree that I have no expectation of privacy with respect to the Company's telecommunications, networking or information processing systems (including, without limitation, files, e-mail messages, and voice messages) and that my activity and any files or messages on or using any of those systems may be monitored or reviewed at any time without notice[.]"

15.     Between February 14, 2016 and June 21, 2018, defendant MARC ASCH served as plaintiff NOBLE MARKETS, LLC's Chief Strategy Officer, and as Chief Financial Officer for plaintiffs NOBLE MARKETS, LLC, NOBLE TALENTS LLC, and NOBLE CAPITAL INTERNATIONAL, LLC.  During that time, defendant MARCH

ASCH inevitably was exposed to, and otherwise acquired, a wide range of confidential and proprietary information about Plaintiffs, including information about their business contacts, financial situation, and intellectual property, and Plaintiffs' specifically designed and proprietary corporate structure.

16.     On or about June 21, 2018, defendant MARC ASCH was terminated from his employment as plaintiff NOBLE MARKETS, LLC's Chief Financial Officer.  Upon information and belief, around this same time period, defendant MARC ASCH began improperly utilizing proprietary, and otherwise confidential, information obtained from his work with Plaintiffs to begin starting up new business enterprises in substantially the same way in which Plaintiffs were set up by other individuals in express contravention of the April 4, 2016 Agreement.

17.     The following day, on June 22, 2018, defendant MARC ASCH was rehired as a temporary consultant as a result of inappropriate actions taken by certain individuals on Plaintiffs' boards, including non-party Nick Varelakis, then the Chief Operations Officer and a friend of defendant MARC ASCH, as well as non-parties Krishan Singh and Richard Kadlick, in defiance of express directives not to do so.

18.     Defendant MARCH ASCH was employed on a temporary basis until August 3, 2018, at which time, the Parties agreed to a mutual separation under suspect circumstances as, upon information and belief, there was no authorization by plaintiff NOBLE MARKETS, LLC's board, and no resolution, approving the mutual separation.

19.     The August 3, 2018 letter confirming the details of the mutual separation (the "Separation Letter"), which was accepted and agreed to by defendant MARC ASCH, provided, inter alia, that plaintiff NOBLE MARKETS, LLC would use its "reasonable

efforts to convert any outstanding interest owed or accrued to [defendants] EHA
Investments LLC, MEA Investments LLC and AJA RSF LLC into Units created in the
Company's next financing round within 3 days of the closing of such round or, if such a
conversion if not possible, the Company will pay any such outstanding interest owed or
accrued to such entities at such times."

20.    Upon information and belief, defendants MEA INVESTMENTS LLC,
EHA Investments LLC, and AJA RSF LLC are entities owned and operated by defendant
MARC ASCH and/or members of his family that are given consideration within the
Separation Letter as the result of defendant MARC ASCH's undue influence over certain
then-shareholders in plaintiff NOBLE MARKETS, LLC, including Mr. Singh and Mr.
Kadlick. Their mere inclusion in the August 3, 2018 letter is reflective of undue influence
and/or the entities being no more than alter egos of defendant MARC ASCH that are set
up for remuneration alone.

21.    The Separation Letter further provided that defendant MARC ASCH "must
continue to abide by the [April 4, 2016 Agreement] [.]"

22.    The "Non-Disparagement" section of the Separation Letter, which
defendant MARC ASCH accepted and agreed to, provided that:

> "You agree that you will take no action which is intended, or would
> reasonably be expected, to materially harm the Company, any affiliate of
> the Company, their respective businesses, officers, directors, or employees,
> harm the reputation of any of the foregoing Persons or entities, or which
> would reasonably be expected to lead to unwanted or unfavorable publicity
> to any of the foregoing Persons or entities.  You further agree that you will
> not make any negative public or private statements, comments, or
> communication in any form, oral, written, or electronic, which in any way
> could constitute libel, slander, or disparagement of the Company, any
> affiliate of the Company, or their respective businesses, officers, directors,
> or employees, which may be considered to be derogatory or detrimental to
> the name or business reputation of the Company or any affiliate of the

Company, or their respective businesses, officers, directors, or employees; provided, however, that the terms of this Section   shall not apply to communications between you and your clergy, spouse, or attorneys, which are subject to a claim of privilege existing under common law, statute, or rule of procedure.

"You and the Company agree that his provision is a material inducement to the Company entering into this Agreement.  Additionally, you and the Company agree that a breach of this Section 2 by you will cause the Company irreparable harm and that the Company may enforce this Section 2 without posting a bond.  In the event of a breach of the provisions set forth in this Section 2, the Company may suspend any payments due under this Agreement pending the outcome of litigation regarding such claimed breach of this Agreement by you.  Further, if you violate this clause in any manner, you immediately forfeit back to the Company any vested equity.

"In the event of a breach of this Section 2, you shall pay Company $10,000.00 as liquidated damages for each established breach of Section 2. The sum is agreed upon as liquidated damages and not as a penalty.  You and the Company have computed, estimated, and agreed upon the sum as an attempt to make a reasonable forecast of probable actual loss because of the difficulty of estimating with exactness the damages which will result."

23.     The "Return of Property" section of the Separation Letter, which defendant

MARC ASCH accepted and agreed to, provided that:

"You confirm that you have returned to the Company all Company property, including computer equipment, credit cards, files and any other documents (including computerized data and any copies made of any computerized data or software) containing information concerning the Company, its business or its business relationships and that, after such return, you have deleted and finally purged any duplicates of such information from any computer or other device under your control.  In the event that you discover that you continue to retain any such property after your last day of employment, you shall return it to the Company immediately and thereafter delete and finally purge all duplicates of such property."

24.     Annexed to the Separation Letter, which defendant MARC ASCH accepted

and agreed to, was a "Termination Certification" signed by defendant MARC ASCH which

provides that:

"This is to certify that I do not have in my possession, nor have I failed to return, any devices, records, data, notes, reports, proposals, lists, correspondence, specifications, drawings, blueprints, sketches, laboratory notebooks, flow charts, materials, equipment, other documents or property, or copies or reproductions of any aforementioned items belonging to Noble Talents, LLC, a Delaware corporation, its subsidiaries, affiliates, successors or assigns (collectively, the 'Company').

"I further certify that I have complied with all terms of the Company's Confidential Information and Invention Assignment Agreement signed by me, including the reporting of any Inventions (as defined therein), conceived or made by me (solely or jointly with others) covered by that agreement, and I acknowledge my continuing obligations under that agreement.

"I further agree that, in compliance with the Confidential Information and Invention Assignment Agreement, I will preserve as confidential all trade secrets, confidential knowledge, data or other proprietary information relating to products, processes, know-how, designs, formulas, developmental or experimental work, computer programs, data bases, other original works of authorship, customer lists, business plans, financial information or other subject matter pertaining to any business of the Company or any of its employees, clients, consultants or licensees."

25.     Notwithstanding the above-excerpted contractual responsibilities of defendant MARC ASCH as to Plaintiffs, upon information and belief, by the end of 2018, defendant MARC ASCH incorporated several entities that were put together utilizing confidential and proprietary information obtained during defendant MARC ASCH's time employed by Plaintiffs including Hidden Road Partners CIV US LLC, incorporated on October 4, 2018, Hidden Road Partners CIV US OTC LLC, incorporated on October 24, 2018, Hidden Road Partners Fund GP LLC, incorporated on October 18, 2018, Hidden Road Partners GP LLC, incorporated on September 17, 2018, and Hidden Road Partners LP, incorporated on September 17, 2018, as well as Hidden Road Civ UK Ltd., a London-based company incorporated on November 30, 2018.

26.    Defendant MARC ASCH continued to misappropriate Plaintiffs' confidential and proprietary material through three (3) additional companies that, upon information and belief, he set up in 2019 including Hidden Road Partners Fund Blocker Ltd., incorporated on March 15, 2019, Hidden Road Partners Onshore Fund LP, incorporated on January 15, 2019, and Hidden Road Partners UK LLP, incorporated on April 4, 2019 (all collectively the "Hidden Road Entities").

27.    Notwithstanding the above-excerpted contractual responsibilities of defendant MARC ASCH as to Plaintiffs, upon information and belief, for several months following his termination, continued to improperly access and utilize Plaintiffs' e-mail servers, through which he actively stole, or otherwise misappropriated, the intellectual property and confidential and proprietary information of Plaintiffs, including that intellectual property acquired from John Betts, a board member of Plaintiffs, and contacted individuals and entities using his Noble e-mail in order to falsely suggest his continued professional affiliation with Plaintiffs. Upon information and belief, these misappropriations included utilizing Plaintiffs' confidential and proprietary information to pitch the Hidden Road Entities' business to at least one former client of Plaintiffs as well as to a former prospective investor in Plaintiffs.

28.    Around the same time that defendant MARC ASCH began setting up the Hidden Road Entities, Plaintiffs began negotiating with non-party Alpha Global Trading, LLC to sell Noble Bank International, a subsidiary of Plaintiffs, for Ten Million Dollars ($10,000,000.00).

29.    Notwithstanding the above-excerpted contractual responsibilities of defendant MARC ASCH as to Plaintiffs, on February 19, 2019, after many months of

protracted, delicate negotiations with Alpha Global Trading, LLC, on an e-mail sent to

about 25 individuals affiliated with Plaintiffs, as preferred investors or otherwise,

defendant MARC ASCH, himself still then a shareholder through his ownership interest in

defendant MEA INVESTMENTS LLC, as well as his being the primary representative of

defendants EHA Investments LLC and AJA RSF LLC, despite being terminated several

months earlier and having no standing to do so as an individual, effectively sank the deal

to sell Noble Bank when he wrote an e-mail stating that:

> "[F]ellow shareholders,
>
> I've been asked by a few folks this am to give my thoughts around the email.
> There is not enough data in that email from Chris Marston (Noble external
> counsel) for me to consent to the deal. Until I receive such clarity, my
> entities can't consent. I prefer to have the deal closed on the same terms that
> I consented to back in December rather than allow the current
> manager/mgmt of Noble Talents to control the proceeds without regard to
> any fiduciary responsibility, even in an escrow account especially where
> there is no clear governance."

30.    Upon information and belief, the February 19, 2019 e-mail was but one of

many inappropriate communications that were violative of the various agreements

defendant MARC ASCH signed with Plaintiffs which materially contributed to the

collapse of the deal to sell Noble Bank in early 2019.  Defendant MARC ASCH, upon

information and belief, had an exceptional amount of influence over others on that e-mail,

as his family and another investor close to his family, had previously acquired a majority

of the preferred stock, including through defendant MARC ASH's ownership and

dominion over defendant MEA INVESTMENTS LLC, as well as his being the primary

representative of  defendants EHA INVESTMENTS LLC and AJA RSF LLC  while

additional smaller investors were also friends with defendant MARC ASCH and his family

and thus subject to his influence.

11

31.     Upon information and belief, while defendant MARC ASCH was busy disparaging and undermining Plaintiffs in order to eviscerate the deal to sell Noble Bank, he was also actively taking steps to steal from his former employer, including an unapproved withdrawal from a JP Morgan Chase account for plaintiff NOBLE TALENTS, LLC in the amount of Thirty-Eight Thousand One Hundred and Fourteen Dollars and Eighty-Four Cents ($38,114.84).

32.     On or about January 16, 2019, defendant MARC ASCH was sent a legal hold notice which provided, inter alia, that he not dispose of any materials and correspondence that may be pertinent to his involvement with Plaintiffs and the use of their confidential and proprietary information.   Around the same time period, Plaintiffs made repeated requests for access to QuickBooks and other programs utilized for the purposes of filing tax returns, which defendant MARC ASCH, at all relevant times, had exclusive access to and the login credentials for as their account manager during his employment. Defendant MARC ASCH, however, never handed over the login credentials for QuickBooks that were in his exclusive possession, despite being unauthorized to personally access them any longer as a result of his termination, and accordingly caused Plaintiffs' electronically generated books and records to be irretrievably compromised, if not wholly destroyed, resulting in substantial financial detriment to Plaintiffs, Plaintiffs' inability to handle tax matters, and Plaintiffs' inability to fully resolve a host of business-related legal matters totaling over Eight Million Dollars ($8,000,000.00).

33.     On April 16, 2019, defendant MARC ASCH was sent a cease and desist letter which directed that he immediately and permanently cease and desist from: (a) the use/misappropriation of any intellectual property of Mr. Betts and/or Plaintiffs; (b) any and

all efforts to materially interfere and compromise the business interests of Mr. Betts and Plaintiffs; (c) breaching, in any way, all provisions of his prior employment agreement with Plaintiffs which survived the end of his employment with same; and (d) otherwise using any trade secrets, inside knowledge, or intellectual property, all of which he obtained insight about from his time as Chief Financial Officer in any way.

34.    Defendant MARC ASCH did not respond to the April 16, 2019 letter, or otherwise demonstrate in any way that he has not continued to inappropriately meddle in Plaintiffs' businesses since.  This action is being filed accordingly.

**FIRST CAUSE OF ACTOIN**
**(VIOLATION OF 18 U.S.C. § 1030)**

35.    Plaintiffs repeat and reallege each and every one of the above allegations as if fully set forth at length hereat.

36.    Following his termination, defendant MARC ASCH intentionally accessed his corporate email, which he no longer had authorization to access as a result of his termination but was still able to as the result of a corporate laptop that was never returned to Plaintiffs, and he was not authorized to have at that time, and denied access to by Plaintiffs, certain of Plaintiffs' protected corporate computers and internal, private information systems including, inter alia, Plaintiffs' QuickBooks, following his termination from Plaintiffs and has continuously ignored demands for such access, despite his contractual obligations compelling same and with the intent of reaching the confidential information contained within for his own uses and those of defendants MEA INVESTMENTS LLC, EHA INVESTMENTS LLC, and AJA RSF LLC, in violation of 18 U.S.C. § 1030(a)(5)(C), and to the detriment of Plaintiffs in amount exceeding Five

Thousand Dollars ($5,000.00) in aggregate value in a one (1) year period, as proscribed by 18 U.S.C. § 1030(c)(4)(A)(i)(II).

37.     As a direct result of defendant MARC ASCH's actions as to his former corporate email account, QuickBooks, and other protected corporate computers and internal, private information systems, Plaintiffs were caused damage and loss including, inter alia, the destruction of the books and records of Plaintiffs and compromised the ability of Plaintiffs to continue to operate going forward and to handle their taxes and settle other legal business-related obligations owed by Plaintiffs in excess of over Eight Million Dollars ($8,000,000.00) as a result of being wholly unable to access their tax information, accounts receivable, and related information needed for their wind down, the disbursement of their assets, and/or the sale of their business interests.

38.     Plaintiffs have accordingly been damaged in amount to be determined by the Court which exceeds the jurisdictional limits of the Court.

39.     For the foregoing reasons, defendant MARC ASCH is liable to Plaintiffs for economic damages in an amount exceeding the jurisdictional limits of this Court.


**SECOND CAUSE OF ACTION**
**(BREACH OF CONTRACT AS TO APRIL 4, 2016 AGREEMENT)**

40.     Plaintiffs repeat and reallege each and every one of the above allegations as if fully set forth at length hereat.

41.     Defendant MARC ASCH entered into the April 4, 2016 Agreement with plaintiff NOBLE MARKETS, LLC wherein he agreed, pursuant to Section 3 ("Confidential Information") to, inter alia, protect plaintiff NOBLE MARKETS, LLC's confidential information including trade secrets, information relating to suppliers and

14

customers, and business information disclosed to him by virtue of his work with plaintiff NOBLE MARKETS, LLC.

42.    Plaintiff fully performed under the April 4, 2016 Agreement and its related February 14, 2016 offer letter by employing defendant MARC ASCH and compensating him as promised from February 14, 2016 through June 21, 2018 and from June 22, 2018 through August 3, 2018.

43.    Notwithstanding the foregoing, defendant MARC ASCH materially breached Section 3 of the April 4, 2016 Agreement.  Upon information and belief, defendant MARC ASCH, in forming the Hidden Road Entities, divulged trade secrets, intellectual property information, and information relating to suppliers and customers, and otherwise utilized confidential business information of Plaintiffs, whom are related companies, to/ with other individuals and entities working with him to set up the Hidden Road Entities starting barely two (2) months after his termination.  Defendant MARC ASCH even participated in certain breaches of Section 3 of the April 4, 2016 Agreement on plaintiff NOBLE MARKETS, LLC's e-mail server after the time of his termination, including, inter alia, unauthorized contact with Citibank Prime Brokerage to leverage the Noble relationship and specialized, proprietary business model and the specialized, proprietary intellectual property that he stole from Plaintiffs to acquire a business relationship to start the Hidden Road Entities and  thus acquire money that he had no entitlement to since he was no longer employed by Plaintiffs at that time, and the use of confidential and proprietary information of Plaintiffs in seeking to secure a former investor and former client of Plaintiffs to involvement themselves with the Hidden Road Entities.

44.     Defendant MARC ASCH's breach is the direct, proximate cause of a substantial amount of financial injury to Plaintiffs, including the compromising of its intellectual property, trade secrets, and relationships with suppliers, customers, advisors (some of whom were subject to non-compete agreements at the time that he pursued them) and confidential business information including, but not limited to, and the specialized, proprietary intellectual property that he stole from Plaintiffs45.      Plaintiffs      have accordingly been damaged in amount to be determined by the Court which exceeds the jurisdictional limits of the Court.

45.     For the foregoing reasons, defendant MARC ASCH is liable to Plaintiffs for compensatory damages in an amount exceeding the jurisdictional limits of this Court.

### THIRD CAUSE OF ACTION
### (BREACH OF CONTRACT AS TO THE SEPARATION LETTER)

46.     Plaintiffs repeat and reallege each and every one of the above allegations as if fully set forth at length hereat.

47.     The Separation Letter, which is signed by non-party Nick Varelakis, the then-Chief Operations Officer of plaintiff NOBLE MARKETS, LLC and the other Plaintiffs and accepted and agreed to by defendant MARC ASCH, and its annexed Termination Certification, which was signed by defendant MARC ASCH, provided that he was to continue to abide by the April 4, 2016 Agreement, not disparage plaintiff NOBLE MARKETS, LLC and any of its affiliates, including the other Plaintiffs, was to return any documents or property belonging to plaintiff NOBLE MARKETS, LLC, and was to preserve as confidential all trade secrets, confidential knowledge, data, and other proprietary information as to plaintiff NOBLE MARKETS, LLC or any of its employees, clients, consultants, or licensees.

48.     Plaintiffs fully performed under the Separation Letter by, inter alia, using their reasonable efforts to convert any outstanding interest owed or accrued to defendants MEA INVESTMENTS LLC,  EHA INVESTMENTS  LLC,  and AJA RSF LLC into units created in plaintiff NOBLE MARKETS, LLC's then-next financing round within three (3) days of the closing of such round or, if not possible, by paying any such outstanding interest owed or accrued to the aforementioned entities, owned and operated by defendant MARC ASCH and/or members of his family, at certain times.

49.     Notwithstanding the foregoing, defendant MARC ASCH materially breached the Separation Letter and its annexed Termination Certification in at least two (2) different manners.

50.     First, upon information and belief, defendant MARC ASCH breached the Separation Letter and the Termination Certification by failing to abide by the April 4, 2016 Agreement, in that in forming the Hidden Road Entities, defendant MARC ASCH divulged trade secrets, intellectual property information, and information relating to suppliers and customers, and otherwise utilized confidential business information of Plaintiffs, whom are related companies, to/ with other individuals and entities working with him to set up the Hidden Road Entities starting barely two (2) months after his termination, including, but not limited to, the specialized, proprietary intellectual property that he stole from Plaintiffs which consisted of, inter alia, corporate structures/models, risk models, and legal/regulatory compliance models, all of which are proprietary in nature and were unique to Plaintiffs

51.     Secondly, defendant MARC ASCH breached the "Non-Disparagement" section of the Separation Letter on February 19, 2019 in his e-mail to shareholders, detailed

17

above, and, upon information and belief, on myriad other occasions through the transmission of confidential, defamatory, and/or materially misleading information, as both an individual and alter ego to defendant MEA INVESTMENTS LLC, as well as through his controlling interest in defendants EHA INVESTMENTS LLC and AJA RSF LLC which led to the collapse of negotiations between non-party Alpha Global Trading, LLC and Plaintiffs for Alpha Global Trading, LLC to acquire Noble Bank.

52.     Defendant MARC ASCH's breach of the Separation Letter and its annexed Termination Certification as to confidentiality is the direct, proximate cause of a substantial amount of financial injury to Plaintiffs, including the compromising of its intellectual property, trade secrets, and relationships with suppliers and customers, and confidential business information and the specialized, proprietary intellectual property that he stole from Plaintiffs, including, but not limited to, the specialized, proprietary intellectual property which consisted of, inter alia, corporate structures/models, risk models, and legal/regulatory compliance models, all of which are proprietary in nature and were unique to Plaintiffs.

53.     Defendant MARC ASCH's breach of the "Non-Disparagement" section of the Separation Letter is a direct, proximate cause of the collapse of negotiations between non-party Alpha Global Trading, LLC and Plaintiffs as to the potential sale of Noble Bank, as well as the Hidden Road Entities wholesale misappropriation of its specialized, proprietary business model.

54.     Plaintiffs have accordingly been damaged in amount to be determined by the Court which exceeds the jurisdictional limits of the Court as a result of defendant MARC ASCH's breach of the Separation Letter and the Termination Certification.

55.     Plaintiffs have accordingly been damaged in amount of no less than Ten Million Dollars ($10,000,000.00) as a result of defendant MARC ASCH's breach of the "Non-Disparagement" section of the Separation Letter, as both an individual and alter ego of defendant MEA INVESTMENTS LLC as well as his being the primary representative of defendants EHA Investments LLC and AJA RSF LLC, as that is how much it was going to be sold to non-party Alpha Global Trading, LLC for.

56.     For the foregoing reasons, Defendants are liable to Plaintiffs for compensatory damages in an amount exceeding the jurisdictional limits of this Court, and in no event less than $10,000,000.00.

**FOURTH CAUSE OF ACTION**
**(INJURIOUS FALSEHOOD/ COMMERCIAL DEFAMATION)**

57.     Plaintiffs repeat and reallege each and every one of the above allegations as if fully set forth at length hereat.

58.     On February 19, 2019 and, upon information and belief, myriad additional occasions both before and after, defendant MARC ASCH, then an ex-employee with no individual shareholder rights and a direct competitor through the then-nascent Hidden Road Entities, made a number of injurious falsehoods about Plaintiffs as a whole, and board member John Betts specifically, or otherwise commercially defamed Plaintiffs and compromised its relationships with shareholders contemplating whether or not to go forward with the deal to sell Noble Bank to Alpha Global Trading, LLC with the intent to injure Plaintiffs and cover-up his own suspect activities

59.     Specifically, defendant MARC ASCH, acting as both an individual and as the alter ego of defendant MEA INVESTMENTS LLC, made the following false, or

otherwise materially misleading, representations in his February 19, 2019 e-mail to shareholders of Plaintiffs:

> "[F]ellow shareholders,
>
> I've been asked by a few folks this am to give my thoughts around the email. There is not enough data in that email from Chris Marston (Noble external counsel) for me to consent to the deal. Until I receive such clarity, my entities can't consent. I prefer to have the deal closed on the same terms that I consented to back in December rather than allow the current manager/mgmt of Noble Talents to control the proceeds without regard to any fiduciary responsibility, even in an escrow account especially where there is no clear governance."

60.    Several of the statements within, including as to lack of fiduciary responsibility or clear governance, when viewed in the context of the history of defendant MARC ASCH's  relationship with Plaintiffs and the actions he had already taken at that point to undercut Plaintiffs through the setting up of the Hidden Road Entities, were known to be false and/or materially misleading when they were said and each had at least 25 shareholders of Plaintiffs as recipients.

61.    Upon information and belief, in addition to the above excerpt, there remains additional written and oral injurious, defamatory correspondence about Plaintiffs in connection with their fiduciary responsibility, governance, and claims particular to Mr. Betts, that Plaintiffs are not privy to at this time, either since they are peculiarly in the possession of Defendants  or were otherwise the subject of spoliation by defendant MARC ASCH, including on Plaintiffs' computer server, in an effort to cover his tracks.

62.    Defendant MARC ASCH, either individually or as the alter ego of defendant MEA INVESTMENTS LLC, had no privilege or authorization to transmit the

above-excerpted false and/or materially misleading statements, and others, to the at least 25 shareholders and other individuals and entities.

63.     The above-excerpted false and/or materially misleading statements, and others, were made with actual malice as to Plaintiffs and with the intent to injure them and cover up his own suspect activities, which is made plain by defendant MARC ASCH's contemporaneous setting up of the Hidden Road Entities as direct competition at the same time that deal to sell Noble Bank was being discussed among Plaintiffs' shareholders, or at the very least with reckless or negligent disregard for the truth.

64.     The above-excerpted statements constituted falsehoods which irretrievably injured and otherwise compromised Plaintiffs' ability to sell Noble Bank to non-party Alpha Global Trading, LLC and defamed and placed a false light on Plaintiffs with their shareholders, thereby compromising their future relationships with same.  The disparaging comments were blatantly false and seemingly made exclusively to alienate Plaintiffs' relationship with shareholders and any perspective acquirers.

65.     For the foregoing reasons, Defendants are liable to Plaintiffs for compensatory damages in an amount exceeding the jurisdictional limits of this Court, and in no event less than Ten Million Dollars ($10,000,000.00).


**FIFTH CAUSE OF ACTION**
**(TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS**
**RELATIONSHIP)**

66.     Plaintiffs repeat and reallege each and every one of the above allegations as if fully set forth at length hereat.

67.     Defendant MARC ASCH had knowledge of the prospective, developing business relationship between Plaintiffs and non-party Alpha Global Trading, LLC as to the sale of Noble Bank through both his former employment with Plaintiffs and through his involvement with defendants MEA INVESTMENTS LLC, EHA INVESTMENTS LLC, and AJA RSF LLC which, as entities, were shareholders in Plaintiffs.

68.     Defendant MARC ASCH, as an individual and as alter ego of defendant MEA INVESTMENTS LLC , as well as his being the primary representative of defendants EHA INVESTMENTS LLC and AJA RSF LLC    intentionally interfered with the prospective business relationship between Plaintiffs and non-party Alpha Global Trading, LLC by disseminating his February 19, 2019 e-mail to shareholders of Plaintiffs with the intent to injure Plaintiffs and with knowledge of the falsity of information contained therein, and by other oral and written correspondence with individuals tied to the contemplated sale of Noble Bank in advance of the collapse of the deal in early 2019.

69.     Defendant MARC ASCH, as an individual and as alter ego of defendant MEA INVESTMENTS LLC, as well as his being the primary representative of defendants EHA INVESTMENTS LLC and AJA RSF LLC  , both acted by the use of wrongful means by maliciously disparaging and/or commercially defaming Plaintiffs in his February 19, 2019 e-mail, and by other oral and written correspondence, and with the sole purpose of injuring Plaintiffs, when considered in the context that he had already taken steps to set up the Hidden Road Entities as direct competitors to Plaintiffs.

70.     As a direct result of defendant MARC ASCH's actions, the deal to sell Noble Bank collapsed in early 2019.

71.    For the foregoing reasons, Defendants are liable to Plaintiffs for compensatory damages in an amount exceeding the jurisdictional limits of this Court, and in no event less than Ten Million Dollars ($10,000,000.00).

### SIXTH CAUSE OF ACTION
### (BREACH OF FIDUCIARY DUTY)

72.    Plaintiffs repeat and reallege each and every one of the above allegations as if fully set forth at length hereat.

73.    As Chief Strategy Officer, and later as Chief Financial Officer and a temporary consultant and signatory to April 4, 2016 Agreement, the Separation Letter, and the Termination Certification, defendant MARC ASCH had a fiduciary duty to Plaintiffs to protect Plaintiffs' confidential information and participate in arms-length transactions with other individuals and entities as to Plaintiffs.

74.    Defendant MARC ASCH engaged in misconduct which contravened his fiduciary duty to Plaintiffs by, inter alia, the above-summarized actions to cause the collapse of the deal to sell Noble Bank and by using confidential information, including trade secrets, intellectual property, and business information of Plaintiffs to the material benefit of the Hidden Road Entities.

75.    As a direct and proximate result of defendant MARC ASCH's actions, Plaintiffs' deal to sell Noble Bank to non-party Alpha Global Trading, LLC collapsed and confidential information as to Plaintiffs was irretrievably compromised and disseminated to others for the purpose of defendant MARC ASCH setting up the Hidden Road Entities.

76.    For the foregoing reasons, defendant MARC ASCH is liable to Plaintiffs for compensatory damages in an amount exceeding the jurisdictional limits of this Court, and in no event less than Ten Million Dollars ($10,000,000.00).

## SEVENTH CAUSE OF ACTION
## (MISAPPROPRIATION OF TRADE SECRETS)

77.     Plaintiffs repeat and reallege each and every one of the above allegations as if fully set forth at length hereat.

78.     Defendant MARC ASCH was in possession of a range of trade secrets as to Plaintiffs as a result of his employment as plaintiff NOBLE MARKETS, LLC's Chief Strategy Officer from February 14, 2016 through June 21, 2018 and as a temporary consultant from June 22, 2018 through August 3, 2018 including, inter alia, proprietary risk models, legal structures, and tax information, information on intellectual property, and proprietary technical information that was designed exclusively by board member John Betts, the end result of which was a structure for the Hidden Road Entities that substantially similar  to Plaintiffs

79.     In setting up the Hidden Road Entities following his termination, defendant MARC ASCH, divulged several trade secrets in breach of the April 6, 2016 Agreement, the Separation Letter, and the Termination Certification, which imposed upon defendant MARC ASCH a confidential relationship and duty to Plaintiffs to protect such information, even after the termination of his employment.

80.     For the foregoing reasons, defendant MARC ASCH liable to Plaintiffs for compensatory damages in amount to be determined by the Court, but in no event less than the jurisdictional limits of the Court.

## EIGHTH CAUSE OF ACTION
## (PIERCING THE CORPORATE VEIL AS TO DEFENDANT MARC ASCH)

81.     Plaintiff repeats and realleges all of the above paragraphs as if fully set forth herein.

82.     Upon information and belief, defendant MARC ASCH is and was, at all relevant times, a partner in and/or the majority and/or sole shareholder of defendant MEA INVESTMENTS LLC.

83.      Upon information and belief, defendant MARC ASCH is an alter ego of defendant MEA INVESTMENTS LLC

84.     Upon information and belief, defendant MARC ASCH, in his personal capacity, exercised complete dominion and control over the business conducted by defendant MEA INVESTMENTS LLC.

85.     Upon information and belief, defendant MARC ASCH, at all relevant times, commingled his personal funds with the corporate funds of defendant MEA INVESTMENTS LLC, as well as assets such as personal property.

86.     Upon information and belief, defendant MARC ASCH, in his individual capacity, abused the privilege of doing business in the corporate form via defendant MEA INVESTMENTS, LLC through his conduct with Plaintiffs and other third-parties involved with the negotiation with non-party Alpha Global Trading, LLC to sell Noble Bank International.

87.     Based on the foregoing, equity dictates that defendant MARC ASCH's corporate veil be pierced as to defendant MEA INVESTMENTS LLC in order to make Plaintiffs whole for the losses sustained as a result of Defendants' actions.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for judgment in his favor and against Defendants awarding Plaintiffs compensatory damages in an amount to be determined at trial, but in no event less than Ten Million Dollars ($10,000,000.00) according to proof at trial, plus punitive damages at an amount to be determined at trial, reasonable attorneys' fees, litigation costs, and expenses according to statute, pre-judgment interest, and such other and further relief as the Court deems appropriate.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all claims alleged herein.

Dated: New York, New York
       March 9, 2020

EXEMPLAR LAW, LLC

By:  _____/s/_____
          PAUL S. HABERMAN (PH 2771)
          Special Counsel
          Attorneys for Plaintiff
          200 Park Avenue, Suite 1700
          New York, New York 10166
          (201) 564-0590: Phone
          phaberman@exemplarlaw.com: E-Mail
          psh@paulhabermanlaw.com